## THE STATE OF SOUTH CAROLINA
## In The Supreme Court

In the Matter of Kenneth Philip Shabel, Respondent.

Appellate Case No. 2021-000268

---

Opinion No. 28059
Submitted September 3, 2021 – Filed September 22, 2021

---

## PUBLIC REPRIMAND

---

Disciplinary Counsel John S. Nichols and Assistant
Disciplinary Counsel Julie K. Martino, both of Columbia,
for the Office of Disciplinary Counsel.

Kenneth Philip Shabel, of Spartanburg, Pro Se.

---

**PER CURIAM:**   In this attorney disciplinary matter, Respondent and the Office
of Disciplinary Counsel (ODC) have entered into an Agreement for Discipline by
Consent (Agreement) pursuant to Rule 21 of the Rules for Lawyer Disciplinary
Enforcement (RLDE) contained in Rule 413 of the South Carolina Appellate Court
Rules (SCACR).  In the Agreement, Respondent admits misconduct and consents
to the imposition of a confidential admonition or a public reprimand.  We accept
the Agreement and issue a public reprimand.  The facts, as set forth in the
Agreement, are as follows.

## I.

## Matter A

In 2007, Client A retained Respondent for assistance with obtaining visitation with
his daughter.  Client A lived in Virginia and the child lived in South Carolina with
her mother and step-father.  Respondent was successful in obtaining visitation for

Client A, but several months later, the child's mother filed an action to terminate Client A's parental rights. The termination of parental rights case went to trial in 2010. Respondent again prevailed, and Client A's visitation rights were restored.

In 2011, the child disclosed sexual abuse by Client A. Client A was arrested and charged with first-degree criminal sexual conduct with a minor. Respondent told Client A that his law partner had experience with handling criminal cases, and Client A, with the help of his father, retained the firm for representation on the criminal matter. The firm charged Client A $10,000. Client A paid $5,000 up front, and the other $5,000 came in contributions made throughout the representation by friends and family members. The firm did not keep an accounting of when and how the fee was earned.

The child's mother refiled for termination of Client A's parental rights. Respondent and his law partner agreed that Respondent would focus on the termination of parental rights matter, while his law partner would focus on the criminal matter. Client A's parental rights were terminated in October 2012. Respondent and Client A discussed filing an appeal, but Client A ultimately decided not to appeal and focus on the criminal case.

Respondent and his law partner prepared the criminal case together and divided the duties. Ultimately, Client A was convicted. Client A and his family discussed filing an appeal and retained Respondent's firm to handle the appeal. The firm charged Client A $3,000 for representation on the appeal and held the money in the firm's trust account until used. Client A then hired a different attorney to write the appellate briefs and assist Respondent with the appeal. In early 2016, the court of appeals held oral arguments. The attorney from the other law firm handled the oral argument.

Shortly thereafter, Respondent went to work for the firm that represented the mother in the underlying family court matter. Respondent informed Client A of his move to the new firm and notified Client A that he could no longer represent him due to the potential conflict of interest. Respondent filed a motion to be relieved. Respondent informed Client A that the $317.57 remaining in the firm's trust account would be sent to his new attorney. The law firm sent a check, but it was returned due to insufficient funds in the firm's trust account.

Client A's father requested an accounting of how the funds provided for Client A's defense were used. He also filed a complaint with ODC. In response to the notice

of investigation, Respondent stated he had already left the firm and could not provide an accounting. Respondent's former law partner provided ODC with an accounting of the funds paid for the criminal appeal. That accounting indicated $317.57 remained on Client A's ledger; however, Respondent did not provide an accounting of the funds paid for the criminal trial. Respondent also indicated that he did not have signatory authority on the trust account, did not participate in monthly reconciliations, and assumed the account was being properly managed by his law partner and the firm's office manager.

Respondent admits the flat-fee agreements should have been in writing; that he should have been able to provide Client A with an accounting upon request; and that he failed to keep his client's money safe. Respondent admits his conduct in this matter violated the following Rules of Professional Conduct in Rule 407, SCACR: Rule 1.5(f) (requiring flat-fee agreements to be in writing) and Rule 1.15 (requiring lawyers to keep client property safe).

**Matter B**

Two checks from Respondent's former firm's trust account were presented against insufficient funds. As to the first check, ODC sent a notice of investigation, but the firm's office manager intercepted the notice and responded herself without informing Respondent or his law partner. The second check was returned when the firm attempted to refund Client A the remaining funds it held on his behalf.

Respondent again responded to ODC that he never had signatory authority on the firm's trust account, did not participate in monthly reconciliations, and did not take steps to ensure that the reconciliations were being performed. Respondent explained that he relied on his law partner to handle all financial matters for the firm.

Respondent admits he abdicated his responsibility for the trust account and that he did not discuss the requirements of Rule 417, SCACR, with his law partner. Respondent acknowledges he should have taken steps to ensure the firm was reconciling the trust account pursuant to Rule 417, SCACR. *See* Rule 1.15(a), RPC, Rule 407, SCACR (mandating compliance with Rule 417, SCACR).

**Matter C**

Respondent was a partner in his former law firm from September 2006 until March 2016. Respondent admits he knew payroll taxes were required to be paid but believed his law partner was responsible for the taxes and paid them. In 2012, Respondent received a notice from the Internal Revenue Service (IRS) stating that as a partner in the firm, he was responsible for payroll taxes that had not been paid. After receiving the IRS notice, Respondent learned that although many payroll tax returns were submitted and taxes were withheld from employees' checks, the taxes had not been remitted to the IRS. Respondent discussed the tax issues with his law partner, and together they met with an IRS representative. The firm entered into an agreement to pay $2,000 per month for the unpaid payroll taxes and penalties.

Unbeknownst to Respondent until 2012, the IRS, the South Carolina Department of Revenue (SCDOR), and the South Carolina Department of Employment and Workforce (SCDEW) had begun placing liens against the law firm's assets based on the failure to pay payroll taxes and unemployment insurance beginning in 2009. The IRS, SCDOR, and SCDEW placed liens against the firm's assets in Spartanburg County. The IRS placed liens against Respondent personally in Greenville County. Respondent entered into an agreement to pay the IRS what was determined to be his personal share of the firm's payroll tax liability. Respondent made all of the payroll tax payments for which he was deemed personally responsible, and the Greenville County liens in his name were satisfied in 2014. When Respondent left the partnership, his law partner agreed to assume responsibility for the remaining liens in Spartanburg County that were filed against the firm's assets.

Respondent explained that he trusted his law partner and believed his law partner was handling the trust account and the payroll taxes but admitted he shared the responsibility and should have taken a more active role in the firm's financial affairs. Respondent expressed deep remorse for not being more involved in the operation of the firm as a partner. Respondent admits his failure to ensure payroll taxes were being remitted to the IRS and SCDOR violated Rule 8.4, RPC, Rule 407, SCACR (prohibiting misconduct involving a pattern of indifference to legal obligation).

## II.

Respondent admits his misconduct constitutes grounds for discipline under Rule 7(a)(1), RLDE, Rule 413, SCACR (prohibiting a violation of the Rules of Professional Conduct). In the Agreement, Respondent consents to a confidential admonition or a public reprimand, agrees to pay costs, and agrees to complete the Legal Ethics and Practice Program Ethics School and Trust Account School within one year.

## III.

We find Respondent's misconduct warrants a public reprimand. Accordingly, we accept the Agreement and publicly reprimand Respondent for his misconduct. Within thirty days, Respondent shall pay or enter into a reasonable plan to repay the costs incurred in the investigation and prosecution of this matter by ODC and the Commission on Lawyer Conduct. Within one year of the date of this opinion, Respondent shall complete the Legal Ethics and Practice Program Ethics School and Trust Account School.

**PUBLIC REPRIMAND.**

**BEATTY, C.J., KITTREDGE, HEARN, FEW and JAMES, JJ., concur.**